[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: POST JUDGEMENT MOTIONS
January 17, 1991, the Superior Court for the State of California, County of Los Angeles, entered a Stipulated Judgement of Dissolution in the matter of Nancy H. Scully vs. Michael C. Scully, case number D 259 220. The judgement awarded the parents joint legal custody of the two minor children with the mother designated as the primary custodial parent. The court also entered orders regarding alimony, child support, a visitation schedule, and parental behavioral requirements and limitations. Those orders were subsequently clarified and modified by the California court on December 22, 1992 and April 20, 1994. Finally, on May 10, 1994, the California court granted the plaintiff; Nancy Scully, permission to relocate to Connecticut with the two minor children, and granted the defendant, Michael Scully, certain rights of visitation with his children during the Christmas and Easter holidays as well as summer vacations.[1]
Issues and complaints concerning visitation and certain behavioral allegations now bring the parties before this court. A hearing was held on April 6, 2000 at which time the court heard the following motions:
 1. Plaintiff's Motion, dated April 6, 2000, for appointment of counsel for minor children.
 2. Plaintiff's Motion, dated January 28, 2000, to Reopen and Modify Judgement Re: Summer Visitation.
CT Page 5007
 3. Plaintiff's Post Judgement Motion for Contempt, dated January 28, 2000.
 4. Defendant's Motion for Contempt, Sanctions and Attorneys' Fees, dated March 7, 2000.
 5. Plaintiff's Post Judgement Motion, dated March 22, 2000, for An Order Re: Counseling for The Minor Child
Testimony was introduced from Nancy Scully-Stebenne, Michael Scully, and Lori Orena. Neither of the minor children was called to testify by the parties. Based upon the evidence presented, and after assessing the credibility of the witnesses, the court makes the following findings and enters the following orders.
1. The plaintiff's motion for appointment of an attorney to represent the minor children is denied. The court finds that the motion was filed on the morning of trial and is untimely. Furthermore, the granting of the motion would have necessitated a substantial delay in resolving the post judgement motions filed in this case. Such a delay would not be in the best interests of either party and, more important, would not be in the best interests of the children. Finally, the reasons stated by the plaintiff in requesting the appointment of an attorney for the children were neither persuasive nor sufficient to manifest the need for an attorney.
2. The plaintiff's motion to modify the summer vacation visitation orders is denied. The court finds that the plaintiff has not provided sufficient proof; nor offered any persuasive evidence, of any material changes in circumstances which would warrant a change in the defendant's summer visitation rights with the children. With the exception of a court ordered brief extension of his summer visitation in 1999 to allow the children to accompany their father to a writer's conference in Hawaii, the evidence is that for each of the eight years that he has taken custody of the children during their summer vacations, the defendant has always had the children back in Connecticut prior to the start of the new school year.
3. The plaintiff's motion for contempt is denied. The evidence presented concerning this motion is neither clear nor convincing proof that the defendant wilfully violated an order of the court.
The complaint is that the defendant did not notify the plaintiff of his flight plans for his Christmas vacation by October 15, 1999, and that his choice of flight plans resulted in the children missing a CT Page 5008 few days of school. The evidence is that the defendant notified the plaintiff by telephone that he would be taking the children either on the 21st or 22nd of December, and that he was having difficulty in getting flights but would notify her when that situation was finalized. He notified the defendant of the flight information on November 14, 1999. The defendant's explanation concerning the cancellation by the airline of a flight previously booked and his subsequent difficulty in scheduling another flight is plausible and reasonable under the circumstances.
The defendant gave the plaintiff more than seven days notice of his intention to assume custodial supervision of the children. He took custody of Allison on December 22, 1999, which was two days before the beginning of the Christmas vacation. While this resulted in Allison missing those two days from school, under these particular circumstances, taking the child out of school for a few extra days before the scheduled vacation was not an unreasonable exercise of parental discretion.
4. The defendants' March 7, 2000 motion for contempt is denied. After evaluating each of the alleged violations of court orders referred to in the defendants' motion for contempt, the court finds that when viewed in the context of the particular circumstance of each allegation, the evidence presented does not meet the required burden of proof that the plaintiff has wilfully violated the orders of the court.
This is a twenty-paragraph litany of incidents beginning in 1992 and continuing through 1999, which, with few exceptions, consists of a general, sweeping recitation about years of frustration on the part of the defendant. Paragraph #13 of the motion claims that "[P]laintiff has been obstructive of the father-daughter relationship for several years, evidenced by a series of incidents, both active and passive, which are designed to adversely impact the defendant's relationship with his daughters, frustrate and interfere with visitation and are sometimes dangerous to the defendant, and which are in clear violation of the four Orders cited herein and domesticated to this Court." Paragraph #19 states that "[P]laintiff has engaged in a pattern of behavior and course of conduct over a number of years to obstruct and undermine the defendant's relationship and visitation with his Children." Paragraph #20 states that "The 1/17/91, 9/18/92, 12/22/92, and 4/20/94 Orders have been violated by plaintiff in letter and in spirit. The plaintiff has systematically attempted to undermine and damage the parental relationship between defendant and his daughters by a clear pattern CT Page 5009 of behavior and conduct."
These broad allegations that the plaintiff has violated court orders involve a number of incidents referred to throughout the motion for contempt, many of which have been the subject of additional court orders after being addressed by the California Superior Court. Additionally, for the most part, the defendant's motion for contempt does not relate to specific facts nor specific court orders. Section 25-27 of the Connecticut Practice Book provides that:
 (a) All motions for contempt must state (1) the date and specific language of the order of the judicial authority on which the motion is based; (2) the specific acts alleged to constitute the contempt of that order, including the amount of any arrears claimed due as of the date of the motion or a date specifically identified in the motion; (3) the movant's claims for relief for the contempt.
 (b) All motions for contempt must state clearly in the caption of the motion whether it is a pendente lite or a postjudgment motion, and the subject matter and the type of order alleged to have been violated.
The basis for section (a) of this rule is due process, and while the court will choose to ignore the defendant's failure to comply with section (b) of the rule, and thus not elevate form over substance, it cannot totally ignore the fact that the defendant motion contains very few specifics as to the language of the order of the judicial authority on which the motion is based, and the specific acts alleged to constitute the contempt of that order.
The first of the defendant's specific complaints is contained in Paragraphs 2 and three in which the defendant alleges that the "[p]laintiff is in violation of the 1/17/91 Order in that she has made, and continues to make subtle, negative suggestions regarding the Children's visits to California, she has not kept the defendant informed regarding the Children's education as to enable the defendant to participate in major decisions regarding the Children's education, and she has failed to contribute to the medical, dental, orthodontic, etc. expenses not covered by insurance."
The defendant does not cite any specific sections of the 1991 California Superior Court decision but the language of the motion suggests the following section to be relevant:
CT Page 5010 Section 2-A-2(b): The Respondent and Petitioner shall meet and confer and neither shall make unilateral decisions without consulting the other party regarding:
 (A) Non-Emergency medical treatment; and
 (b) Major decisions regarding education.
 Section 2.-I: Neither Respondent or Petitioner shall make derogatory remarks about the other in the presence of the minor children.
The court finds that the defendant offered no credible evidence to prove that the plaintiff failed to pay her share of unreimbursed medical, dental and orthodontic expenses.
The testimony concerning subtle and negative suggestions by the plaintiff regarding visits to California is simply insufficient to satisfy the burden of proof required to find the plaintiff in contempt. Even the testimony from Ms. Orena concerning alleged derogatory remarks by the plaintiff about the defendant was not persuasive. The defendant has not proven that any such derogatory remarks were made in the presence of the children, that the children ever heard any such remarks, or whether any remarks that were made by the plaintiff and heard by the children were in fact derogatory in nature. We do not know what the children did or did not hear as the children did not testify at the hearing.
The defendant further complains that the plaintiff has not provided him with information regarding the children's education in violation of the January 17, 1991 court order. The 1991 order of the California Superior Court does not require the plaintiff to provide the defendant with educational information. That order refers only to major educational decisions and the meaning of that term "major decision regarding education" is vague. While there is evidence that the plaintiff has not provided the defendant with educational information regarding the children, that evidence does not prove that she unilaterally made major educational decisions concerning the children.[2]
Although not specifically alleged in the written motion, during the hearing evidence was presented that the plaintiff failed to notify the defendant before making decisions regarding treatment of the children for non-emergency medical treatment. The specific instances in question involved a possible fracture of a child's wrist on one CT Page 5011 occasion and a possible fracture of a child's ankle on another occasion. Apparently the plaintiff brought the child to see a physician for a diagnosis and treatment before notifying the defendant. While a fracture could reasonably be considered to be an emergency, no evidence concerning whether these injuries were emergency or non-emergency conditions was presented to the court. The fact of the matter is that the defendant was notified of these incidents once the child had been seen by a physician. The court does not find this behavior to constitute a wilful violation of the court order.
It was the incident involving the Christmas vacation that sparked this latest round of cross complaints. Mr. Scully went to the plaintiff's house to pick up Sara and Allison for the Christmas vacation trip to California. Sara refused to go with her father and neither Mr. Scully nor Ms. Scully-Stebenne was able to convince the child to go with him. Additionally, the defendant alleges that the plaintiff did little to support him in convincing Sara to go with him and in fact made the situation worse by telling him, in the presence of the child, that it was his problem.
It is clear to the court that this incident was very difficult and upsetting for both Mr. Scully and Ms. Scully-Stebenne, and that words were likely exchanged between them. But there is insufficient credible evidence that the mother intentionally encouraged the child to behave in the maimer described or to conclude that this was a wilful, intentional decision by the plaintiff to violate the orders of the court.
5. The plaintiff-mother is understandably concerned about Sara's recent refusal to visit with her father in California and she is asking for permission to "engage the child in any type of counseling to address this problem." The defendant-father is opposed to this plan. He believes that the parents should attempt to talk to and work with Sara to find the root of this behavior before placing her in counseling. It would appear that neither parent has specifically asked Sara why she does not want to go to California with her father. The father does not yet consider this to be a crises situation even though he is the parent who stands to lose time with Sara should this continue. There is no evidence, nor is it being suggested, that Sara has exhibited any other behavior or emotional problems, although there is some suggestion that she may be afraid of flying
While it may yet be determined that the best interests of the child will be served by having her evaluated by, and perhaps entering into treatment with, a child or adolescent psychologist, the court does CT Page 5012 not conclude that professional intervention is warranted, or is in the best interest of Sara, at this time. Often the best interests of a child are achieved through patience, understanding, and communication by the parents. Accordingly, the motion for counseling at this time is denied.
Per Order of the Court:
SULLIVAN, JUDGE.